**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL S. ESSIS &** | : | |
| **REBECCA A. ESSIS,** | : | No. 1:24-cv-01383 |
| **Plaintiffs** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **UNITED SERVICES AUTOMOBILE** | : | |
| **ASSOC.,** | : | |
| **Defendant** | : | |
| | : | |

**<u>MEMORANDUM</u>**

Before the Court is Defendant United Services Automobile Association ("Defendant" or "USAA")'s motion to dismiss (Doc. No. 8) Count II of the complaint (Doc. No. 1) filed by Plaintiffs Michael S. Essis ("Mr. Essis") and Rebecca A. Essis ("Mrs. Essis") (collectively "Plaintiffs"). For the reasons that follow, the Court will deny Defendant's motion.

**I.    BACKGROUND**

**A.    Factual Background**[1]

On June 21, 2018, Mr. Essis was involved in an automobile collision that occurred at "approximately 12:32 P.M. on Lincoln Way in Franklin County, Pennsylvania." (Doc. No. 1 ¶ 7.) Mr. Essis was a passenger in an automobile operated by third party Rodney Sheaffer ("Mr. Sheaffer") when an automobile in front of Mr. Essis and Mr. Sheaffer began to slow down. (Id. ¶¶ 8–9.) Mr. Sheaffer applied the brakes in response to the slowing vehicle, when, at the same time, Jada Loreman ("the tortfeasor") "was operating her automobile behind Mr. Sheaffer's

---

[1]   The factual background is drawn from Plaintiffs' complaint (Doc. No. 1), the allegations of which the Court accepts as true for purposes of the pending motion to dismiss. See <u>Kedra v. Schroeter</u>, 876 F.3d 424, 434 (3d Cir. 2017).

automobile" and "failed to slow and caused her automobile to strike the rear end of Mr. Sheaffer's automobile." (Id. ¶¶ 9–10.)

As a result of the automobile collision, Mr. Essis suffered injuries including: permanent left foot drop; "permanent gait change (i.e. limp, drags foot);" "L5-S1 disc herniation;" "[s]pondylolisthesis of L5 on S1;" "[f]oraminal narrowing at L5 nerve root;" "[l]umbosacral pain with radiculopathy into the left gluteal and down his leg into foot;" hip pain; pelvic pain; cervical pain; "[d]ifficulty walking;" "[i]nability to stand or walk for long periods of time;" left foot weakness; left leg weakness; left calf atrophy; and "[s]evere shock, strain or sprain of the nerves, muscles, tissues, ligaments, and vessels of the musculoskeletal system," among "other serious and severe injuries as the medical records may reveal or which have yet to be diagnosed." (Id. ¶ 11(a)–(p).)

Due to his injuries from the automobile collision, Mr. Essis has had to: "expend large sums of money for medical attention, rehabilitation, medical supplies, medicines, services of nurses, and other medical attention;" "endure physical and mental pain and suffering, discomfort, inconvenience, embarrassment, humiliation, mental anguish, anxiety, and emotional distress;" suffer "the loss of wages" and impairment of his earning capacity; suffer "a loss of enjoyment of life and life's pleasures;" and suffer impairment of "his general health, strength, and vitality." (Id. ¶ 12(a)–(e).)  Meanwhile, Mrs. Essis "has been deprived of the care, comfort, services, and society of her husband," "has incurred debt and expenses," and "has suffered loss of consortium." (Id. ¶ 13(a)–(c).)

Allstate Fire and Casualty Insurance Company ("Allstate") insured the tortfeasor for "bodily injury protection limits in the amount of [f]ifty [t]housand [d]ollars ($50,000) per person." (Id. ¶ 14.)  The tortfeasor only maintained automobile insurance with Allstate.  (Id. ¶

2

15.)  Allstate tendered fifty thousand dollars ($50,000) to Mr. Essis pursuant to its policy with the tortfeasor.  (Id. ¶ 16.)  The fifty thousand dollars ($50,000) tendered by Allstate was inadequate "to compensate Plaintiffs for the serious injuries and damages that they sustained as a result of the subject collision."  (Id. ¶ 17.)  Plaintiffs therefore looked to obtain compensation from other insurance companies.  See (id. ¶¶ 20, 23).

Mr. Essis's employer Essis & Sons Carpet One Floor & Home ("Essis & Sons") contracted with Liberty Mutual Insurance ("Liberty Mutual") for uninsured motorist coverage of its automobiles in the amount of three hundred fifty thousand dollars ($350,000).  (Id. ¶ 19.)  At the time of the collision, Mr. Essis was a passenger in, and Mr. Sheaffer operated, "a vehicle owned by his employer Essis & Sons."  (Id. ¶ 18.)  Because the vehicle was owned by Essis & Sons, Mr. Essis brought a claim for underinsured motorist coverage with Liberty Mutual and received Liberty Mutual's underinsured motorist policy limits of three hundred and fifty thousand dollars ($350,000.00).  (Id. ¶¶ 20–21.)  The additional three hundred fifty thousand dollars ($350,000) was still inadequate "to compensate Plaintiffs for the serious injuries and damages that they sustained as a result of the subject collision."  (Id. ¶ 22.)  Therefore, Plaintiffs turned to Defendant for compensation.  (Id. ¶¶ 23–25.)

Defendant issued Plaintiffs an automobile insurance policy under policy number 011125793U71027, which Plaintiffs assert was in effect on the date of the collision.  (Id. ¶ 23.)  Under Plaintiffs' policy, the underinsured motorist protection limit was set at three hundred thousand dollars ($300,000) per person, and it could be "stacked times two vehicles for a total of" six hundred thousand dollars ($600,000).  (Id. ¶ 24.)  Thus, Plaintiffs began to pursue an underinsured motorist claim with Defendant.  (Id. ¶ 28.)  Plaintiffs provided various documents to Defendant including medical records and lien information concerning Mr. Essis's injuries,

condition, treatment, and prognosis. (Id. ¶ 29.) On December 21, 2022, Plaintiffs, through legal counsel, submitted a written demand to Defendant to tender an offer of the underinsured motorist coverage with documentation that Plaintiffs' claims were worth more than the four hundred thousand dollars ($400,000) they received from Allstate and Liberty Mutual. (Id. ¶¶ 30–31.) On July 11, 2023, Plaintiffs sent supplemental documentation to Defendant in support of their claim. (Id. ¶ 36.)

On July 27, 2023, however, adjuster Carl Macklin, who worked for Defendant, informed Plaintiffs by telephone that Defendant "was denying [their] underinsured motorist claim." (Id. ¶ 32.) Defendant's explanation for the denial was as follows: Mr. Essis's injuries were not caused by the subject collision; "[Mr. Essis] elected to see a chiropractor immediately after the incident instead of reporting to the emergency room;" "[Mr. Essis] had a prior diagnosis of gout;" and "the medical records and reports did not show that the permanent injury was caused by the accident." (Id. ¶ 33.) Defendant made that determination without consulting physicians or conducting an independent medical examination of Mr. Essis and despite the medical records and reports that Plaintiffs sent to Defendant "which contained the opinions of four treating physicians and one physician assistant who physically observed [Mr.] Essis and had reviewed [Mr.] Essis's files that [his] permanent injuries and symptoms were directly related to the subject collision." (Id. ¶¶ 34–35.) On July 27, 2023, Plaintiffs requested that Defendant review the documentation sent on December 21, 2022, and supplemental documentation sent on July 11, 2023. (Id.) Then, on September 19, 2023, Defendant informed Plaintiffs that it was no longer denying Plaintiffs' underinsured motorist claim, but it required more time to evaluate the claim. (Id. ¶ 37.) On May 6, 2024, Plaintiffs submitted another written demand, to which Defendant responded that it was still evaluating Plaintiffs' claim and that Mr. Essis's injuries were "complicated and required

more scrutiny and potentially review by one or more experts."  (Id. ¶ 38.)

### B.    Procedural Background

Plaintiffs initiated the instant action on August 16, 2024, three months after Defendant's

last correspondence to them.  (Id. at 15.)  Plaintiffs allege (1) that Defendant breached the

insurance contract by failing to evaluate and investigate Plaintiffs' underinsured motorist claims

promptly, objectively, and fairly, and (2) that Defendant acted in bad faith by poorly handling the

claim, exercising a lack of due diligence, being unresponsive, conducting a haphazard

investigation, and causing unreasonable delays.  (Id. ¶¶ 45–47, 50.)  On September 4, 2024,

Defendant responded to Plaintiffs' complaint by filing a motion to dismiss Count II of the

complaint (alleging bad faith in violation of 42 Pa.C.S. § 8371) (Doc. No. 8) and a brief in

support of that motion (Doc. No. 9).  On September 16, 2024, Plaintiffs filed both a brief in

opposition to the motion to dismiss (Doc. No. 11) and a reply to the motion to dismiss (Doc. No.

12).  Finally, on September 20, 2024, Defendant filed a reply in support of their motion to

dismiss.  (Doc. No. 13.)  Having been fully briefed, Defendant's motion is ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d

224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314, 341 n.42 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these

documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit

Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.    DISCUSSION

### A.    Applicable Legal Standard

Under Pennsylvania law, in an action arising under an insurance policy, a court may

"[a]ward punitive damages against the insurer" or "[a]ssess court costs and attorney fees against

the insurer" if the court finds an insurer has acted in bad faith. See 42 Pa.C.S. § 8371.

Pennsylvania courts have defined bad faith as:

> [A]ny frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary
> that such refusal be fraudulent. For purposes of an action against an insurer for
> failure to pay a claim, such conduct imports a dishonest purpose and means a breach
> of a known duty (i.e. good faith and fair dealing), through some motive of self-
> interest or ill will; mere negligence or bad judgment is not bad faith.

See Ridolfi v. State Farm Mut. Auto. Ins. Co., 146 F. Supp. 3d 619, 623 (M.D. Pa. 2015)

(quoting Morrison v. Mountain Laurel Assur. Co., 748 A.2d 689, 691 (Pa. Super. Ct. 2000)).

Therefore, a plaintiff must "show (1) that the defendant did not have a reasonable basis for

denying benefits under the policy and (2) that defendant knew or recklessly disregarded its lack

of reasonable basis in denying the claim." See UPMC Health Sys. v. Metro. Life Ins. Co., 391

F.3d 497, 505 (3d Cir. 2004) (quoting Terletsky v. Prudential Prop. & Casualty Ins. Co., 649 A.2d

680, 688 (Pa. Super. Ct. 1994)); Rancosky v. Wash. Nat'l Ins. Co., 170 A.3d 364, 365 (Pa. 2017)

(maintaining the two-part bad faith test established by Terletsky).

Courts may find bad faith under § 8371 even if there is no denial of benefits because

insurer bad faith extends to "a wide variety of objectionable conduct." See Condio v. Erie Ins.

Exch., 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006). Lack of good faith investigation, failure to

communicate with claimants, and delay are examples of bad faith conduct other than a denial of

benefits.  See Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. 2004) (holding that

bad faith encompasses a wide variety of conduct); Frog, Switch & Mfg. Co., Inc. v. Travelers

Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999) (citations omitted) (stating that an insurance

company's lack of investigation into the facts or failure to communicate with the insured can rise

to the level of bad faith).  For bad faith claims stemming from lack of investigation or failure to

communicate, a plaintiff must show that the insurer failed to conduct a good faith investigation

or failed to communicate with plaintiff to satisfy the first part of Terletsky.  See Frog, Switch &

Mfg. Co., Inc., 193 F.3d at 751 n.9 ("Bad faith is a frivolous or unfounded… lack of

investigation into facts, or a failure to communicate with the insured.")).  In those cases, "[w]hile

length of time [an insurer] t[akes] to investigate is not per se bad faith, it is a factor for the trial

court to consider when looking at all the circumstances of the case."  See Grossi v. Travelers

Personal Ins. Co., 79 A.3d 1141, 1159–60 (Pa. Super. Ct. 2013).  The second part of the test,

however, still requires a showing of knowledge or reckless disregard of its lack of good faith

investigation of a claim.  See, e.g., id. (holding that the trial court did not err in finding that the

insurance company acted with recklessness when it disregarded its lack of good faith

investigation into plaintiff's claims).  In a bad faith claim premised on delay, "courts have

generally only inferred plausible knowledge or reckless disregard where the time periods of

delay were much longer than six months."  See Young v. State Farm Auto. Ins. Co., 614 F. Supp.

3d 153, 156–57 (E.D. Pa. 2022) (quoting White v. Travelers Ins. Co., No. 20-cv-02928, 2020 WL

7181217, at *5 (E.D. Pa. Dec. 7, 2020)).

### B.    Arguments of the Parties

Defendant argues that dismissal of Count II of Plaintiffs' complaint is appropriate

because Plaintiffs fail to allege facts supporting a plausible inference that it acted in bad faith.

(Doc. No. 9 at 4.)  Defendant states that Plaintiffs' complaint merely provides barebones conclusory allegations without sufficient facts.  (Id. at 7.)  In support of its argument, Defendant avers that the facts Plaintiffs allege to demonstrate bad faith include: (1) Plaintiffs were insured by Defendant for underinsured motorist coverage; (2) Plaintiff Michael Essis was involved in a motor vehicle accident; (3) Plaintiffs presented a claim for underinsured motorist benefits to Defendant; (4) Plaintiffs submitted documentation to Defendant; (5) Defendant made an offer to Plaintiffs after it reviewed the submissions; and (6) they filed suit.  (Id. at 11.)  As such, Defendant asserts that the allegations are insufficient to support a cause of action for bad faith. (Id.)

In response, Plaintiffs contend that they have pleaded sufficient facts to state a claim for bad faith under Pennsylvania's bad faith statute, 42 Pa.C.S. § 8371.  (Doc. No. 11 at 6.)  They assert that Defendant focuses only on paragraphs fifty-one (51) through fifty-five (55) of the complaint, and fails to inform the Court of other relevant allegations such as: (1) Plaintiffs' written demand package with documentation of the worth of Plaintiffs' claim submitted to Defendant on December 21, 2022; (2) USAA adjuster Carl Macklin's phone call to Plaintiffs' counsel on July 27, 2023, informing them of the denial of Plaintiffs' claim; (3) the basis for USAA's denial, including that the injury was not caused by the collision, Plaintiff elected to see a chiropractor rather than reporting to the emergency room after the collision, Plaintiff had a prior diagnosis of gout, and the medical records and reports did not show that the permanent injury was caused by the accident; (4) USAA reached its decision without consulting physicians or conducting an independent medical examination (hereafter "IME") of Mr. Essis; and (5) USAA reached its conclusion in spite of receiving Plaintiffs' medical records and reports as part of the written demand package.  (Id. at 8 (citing Doc. No. 1 ¶¶ 30–36).)  Plaintiffs further argue that the

federal and state courts of Pennsylvania have held that delay of an IME is probative of bad faith. (Id. at 9 (citations omitted).)  Accordingly, they maintain that Defendant's motion to dismiss should be denied.

### C.   Whether Defendant Is Entitled to Dismissal of Count II Pursuant to Rule 12(b)(6)[2]

Upon careful consideration of the allegations of Plaintiffs' complaint, the briefs of the parties, and relevant authority, and accepting as true all factual allegations in Plaintiffs' complaint and construing all reasonable inferences to be drawn therefrom in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently pleaded facts giving rise to a plausible inference of Defendant's bad faith.  First, the Court finds that Plaintiffs' complaint pleads facts sufficient to support a plausible determination that Defendant failed to conduct a good faith investigation of the claim.[3]  The facts in the complaint state that Defendant denied

---

[2]  By way of its reply brief and attached exhibits (Doc. Nos. 13, 13-1–13-4), Defendant offers additional facts for the Court's consideration.  However, in ruling on a 12(b)(6) motion to dismiss, the Court may consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputably authentic documents if the complainant's claims are based upon these documents."  See Mayer, 605 F.3d at 230.  Therefore, the Court will not consider the factual allegations asserted in Defendant's reply brief and supporting exhibits in connection with its resolution of the instant motion.

[3]  This case is unusual because Defendant first denied Plaintiffs' claim but, upon review, reversed the denial and re-opened the case for investigation.  (Doc. No. 1 ¶ 37.)  The decision on the re-opened investigation is still pending.  (Id. ¶ 38.)  Therefore, the Court must confront the question of whether to treat Defendant's investigation as a single investigation.  Under Pennsylvania law, a claim for bad faith first accrues from the initial denial such that any further refusals are not considered as distinct acts of bad faith.  See Adamski, 738 A.2d at 1042; Simon Wrecking Co., Inc. v. AIU Ins. Co., 350 F. Supp. 2d 624, 632 (E.D. Pa. 2004).  Although the case law applies that standard to calculations of when the statute of limitations begins to run on bad faith claims, it stands to reason that the standard would also apply here because § 8371 is concerned with the "manner in which insurers discharge their duties of good faith and fair dealing during the pendency of an insurance claim" rather than "whether the insurer ultimately fulfilled its policy obligations"—otherwise insurers could act in bad faith throughout the claim process, "but avoid any liability under section 8371 by paying the claim at the end."  See Berg v. Nationwide Mut. Ins. Co., 44 A.3d 1164, 1177–78 (Pa. Super. Ct. 2012); Wolfe v. Allstate Prop.

Plaintiffs' claim without (1) consulting physicians or (2) completing an IME.  (Doc. No. 1 ¶ 34.)

Plaintiffs' complaint further alleges that they submitted a written demand package containing

"the opinions of four treating physicians and one physician assistant who had physically

observed [Mr.] Essis and had reviewed [his] files." (Id. ¶ 35.)  Although Defendant contends that

Plaintiffs only aver "'bare-bones' [sic] conclusory allegations that are not accompanied by

sufficient facts," (Doc. No. 9 at 7), the Court finds to the contrary because the aforementioned

allegations are neither conclusory nor bare bones.  Rather, the foregoing allegations support the

plausible inference that Defendant did not conduct a good faith investigation because it ignored

the opinions of multiple physicians and a physician assistant in order to determine, without use

of its own physician or expert, that Mr. Essis did not have a permanent injury caused by the

collision.  That inference is only strengthened by the complaint's allegations of Defendant's

statement later on in the investigation that "[Mr.] Essis's injuries were complicated and required

more scrutiny and possibly review by one or more experts."  (Id. ¶ 38.)

    In addition, the Court finds that the complaint's allegations of Defendant's failure to

communicate also gives rise to a plausible inference of bad faith.  The Court notes that, as

alleged by the complaint, nineteen months elapsed between Plaintiffs' first written demand to

Defendant and Plaintiffs' filing of this action.  (Doc. No. 1 ¶¶ 30, 38.)  In that time period,

Plaintiffs submitted to Defendant an initial demand package on December 21, 2022, a

supplementary demand package on July 11, 2023, a request for Defendant to review both the

December 21, 2022 and July 11, 2023 demand packages, and a second written demand that was

sent on May 6, 2024.  (Id. ¶¶ 31, 36, 38.)  Yet, Plaintiffs received communications from

--------

& Cas. Ins. Co., 790 F.3d 487, 498–99 (3d Cir. 2015).  Accordingly, the Court will treat
Defendant's investigation before and after the denial as a single investigation for the purpose of
assessing Plaintiffs' bad faith claim.

Defendant only three times: first, on July 27, 2023, seven months after the initial demand package, when Defendant initially denied Plaintiffs' claim; second, on September 19, 2023, when Defendant informed Plaintiffs that it was going to re-open the investigation; and third, on May 6, 2024, when Defendant informed Plaintiffs, after Plaintiffs' prompting, that it was still investigating because Plaintiffs' injuries were complicated.  (Id. ¶¶ 32, 38.)

Those allegations serve as evidence of bad faith not only on the ground of failure to communicate but also on the ground of delay.  As alleged in the complaint, despite Plaintiffs' proactive attempts to communicate with Defendant and provide it with relevant documents, Defendant communicated only three times over a span of nineteen months with Plaintiffs. Because Plaintiff specifically alleged that over a nineteen-month period Defendants communicated with them only three times, the Court can plausibly infer bad faith based on failure to communicate and delay.  See Padilla v. State Farm Mut. Auto. Ins. Co., 31 F. Supp. 3d 671, 676 (E.D. Pa. 2014) (finding bad faith based on delay and failure to communicate when the plaintiff specifically alleged that, over a five-month period of time, defendant either ignored or requested more information upon the plaintiff's several requests for an evaluation of her claim). Therefore, based on the foregoing, the Court concludes that the factual allegations contained in the complaint are sufficient to support the plausible inference that Defendant failed to conduct a good faith investigation, failed to communicate, and delayed resolution of Plaintiffs' claim. Next, the Court will address whether the complaint plausibly alleges that Defendant knew or recklessly disregarded its lack of good faith investigation, failure to communicate, or unreasonable delay.

The Court finds that the allegations of Plaintiffs' complaint, accepted as true, are sufficient to support a plausible inference that Defendant knew or recklessly disregarded its lack

of a good faith investigation. As stated <u>supra</u>, the complaint alleges that Plaintiffs submitted documentation to Defendant containing medical records and the opinions of four physicians and a physician assistant regarding Mr. Essis's permanent injuries. (<u>Id.</u> ¶ 35.) The complaint also alleges that Defendant reviewed Plaintiffs' documentation and made an initial determination on Plaintiffs' claim without consulting physicians or conducting an IME of Mr. Essis. (<u>Id.</u> ¶ 34.) Months later, Defendant reversed the denial and re-opened the investigation. Defendant communicated to Plaintiffs that Mr. Essis's injuries were complicated to the point where they required more scrutiny and possibly review by one or more experts. (<u>Id.</u> ¶ 38.) Given that Defendant initially denied Plaintiffs' claim, later rescinded that decision, and then acknowledged both the complicated nature of Mr. Essis's injuries and the fact that it may need an expert's input in evaluating Plaintiffs' claim, the Court can plausibly infer from the factual allegations in the complaint that Defendant knew or recklessly disregarded its lack of a good faith investigation.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Count II of Plaintiffs' complaint (Doc. No. 8) will be denied. An appropriate Order follows.