IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL S. ESSIS & | : | |
| REBECCA A. ESSIS, | : | No. 1:24-cv-01383 |
|     Plaintiffs/Counterclaim Defendants | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| UNITED SERVICES AUTOMOBILE | : | |
| ASSOC., | : | |
|     Defendant/Counterclaim Plaintiff | : | |
| | : | |

**MEMORANDUM**

Before the Court is Defendant/Counterclaim Plaintiff United Services Automobile Association ("Defendant")'s motion for judgment on the pleadings, seeking a declaratory judgment in its favor as to Plaintiffs/Counterclaim Defendants Michael and Rebecca Essis (individually as "M. Essis" and "R. Essis" and collectively as "Plaintiffs")'s breach of contract and insurance bad faith claims. For the following reasons, the Court will deny Defendant's motion.

I.  BACKGROUND[1]

M. Essis was a passenger in an automobile owned by his employer Essis & Sons Carpet One Floor & Home that was involved in an automobile accident on June 21, 2018, at "Lincoln Way in Franklin County, Pennsylvania." (Doc. No. 1 ¶¶ 7, 19.) As a result of that automobile accident M. Essis suffered injuries and R. Essis suffered a loss of consortium. (Id. ¶¶ 11, 13.) The tortfeasor maintained automobile insurance with Allstate Fire and Casualty Insurance Company ("Allstate") for "bodily injury protection" with a limit in the amount of fifty thousand

---

[1] This factual background is drawn from the allegations of Plaintiffs' complaint (Doc. No. 1), the allegations of Defendant's answer and counterclaim for declaratory judgment (Doc. No. 17), and Plaintiffs' answer to Defendant's counterclaim (Doc. No. 19).

dollars ($50,000) per person.  (Id. ¶ 14.)  Allstate tendered the fifty thousand dollars to M. Essis pursuant to its policy with the tortfeasor.  (Id. ¶ 16.)  Plaintiffs then turned to Liberty Mutual Insurance ("Liberty") for underinsured motorist ("UIM") coverage because Liberty provided M. Essis's employer with a UIM policy with a limit of three hundred and fifty thousand dollars ($350,000).  (Id. ¶ 19.)  M. Essis received three hundred and fifty thousand dollars ($350,000) pursuant to his employer's policy with Liberty.  (Id. ¶ 21.)  Because the four hundred thousand dollars ($400,000) collected from Allstate and Liberty were insufficient to compensate Plaintiffs for M. Essis's injuries and damages, they turned to Defendant, who contracted with them to provide secondary UIM coverage.  (Id. ¶¶ 17, 22, 23, 28.)

Defendant initially denied Plaintiffs' request for coverage on July 27, 2023, approximately seven months after Plaintiffs submitted their written demand for Defendant to tender an offer of UIM coverage.  (Id. ¶¶ 30, 32.)  That same day, Plaintiffs, through counsel, requested Defendant to re-review their December 21, 2022 demand package and the supplemental documentation they provided on July 11, 2023.  (Id. ¶ 36.)  On September 19, 2023, Defendant informed Plaintiffs that it was re-opening its investigation and would require further time to evaluate their UIM claim.  (Id. ¶ 37.)  On May 6, 2024, Plaintiffs submitted another written demand to Defendant, which informed them that it was still evaluating their claim.  (Id. ¶ 38.)

Plaintiffs initiated this action on August 16, 2024, asserting a claim for breach of contract (Count I) and insurance bad faith (Count II).  (Doc. No. 1.)  Defendant responded by filing a motion to dismiss Plaintiffs' bad faith claim on September 4, 2024.  (Doc. No. 8.)  The Court issued a Memorandum and Order denying Defendant's motion to dismiss Plaintiffs' bad faith claim on December 16, 2024.  (Doc. Nos. 15, 16.)  Defendant subsequently filed its answer with

twenty (20) affirmative defenses and a counterclaim for declaratory judgement on January 6, 2025.  (Doc. No. 17.)  Defendant attached two exhibits to its answer: the policy between itself and Plaintiffs and a signed release agreement.  (Doc. Nos. 17-1, 17-2.)  Defendant's counterclaim asserts that Plaintiffs signed a release agreement on September 3, 2020.  (Id. ¶ 9.)  The release reads, in pertinent part:

> This Indenture [sic] Witnesseth [sic] that we in consideration of the sum of FIFTY THOUSAND dollars ($50,000.00), receipt whereof is hereby acknowledged, do hereby for our heirs, personal representatives and assign [sic], release and forever discharge ROGER HINTON, JADA LOREMAN, Allstate Fire and Casualty Insurance Company and any other person, firm or corporation charged or chargeable with responsibility of liability, their heirs, representative or assigns, form [sic] any and all claims, demands, damages, costs, expenses, loss of service, action and causes of action arising from any act or occurrence up to the present time, and particularly on account of all personal injury, disability, property damage, loss or damage of any kind sustained or that we may hereafter sustain in consequence of an accident that occurred on or about the 21st day of June, 2018, at or near SR 30 LINCOLN WAY EAST, FAYETTEV1LLE, PA. ** [. . .] ** This release is given with the consent and subrogation of my underinsured motorist carrier Liberty Mutual. This release does not release Liberty Mutual from any liability it may have under underinsured motorist's coverage.

(Doc. No. 17-2 at 2, 4.)

Defendant seeks a declaratory judgment stating that, pursuant to the release agreement, Plaintiffs have released it from any UIM claim they may have against Defendant "for damages allegedly sustained as a result of the underlying motor vehicle accident of June 21, 2018."  (Doc. No. 17 ¶ 23.)  Plaintiffs filed an answer to Defendant's counterclaim on January 24, 2025, admitting that they signed the release agreement.  (Doc. No. 19.)  However, Plaintiffs allege that: (1) the claim against Defendant was the second priority UIM claim after Liberty; (2) R. Essis, the holder of Defendant's UIM policy, was not a party to the release and did not sign it; (3) Liberty consented to and waived subrogation rights; and (4) the UIM claim against Liberty was the only one ripe at the time of execution of the Sept. 3, 2020 release.  (Id. ¶¶ 6, 13, 14.)

3

On January 31, 2025, after a case management conference with the Court, Defendant filed a motion for judgment on the pleadings as to its counterclaim.  (Doc. No. 22.)  Defendant filed a brief in support of its motion on February 3, 2025.  (Doc. No. 23.)  Plaintiffs filed their brief in opposition to Defendant's motion for judgment on the pleadings on February 19, 2025.  (Doc. No. 26.)  Defendant has not filed a reply and the time for doing so has elapsed.  Therefore, the motion for judgment on the pleadings is ripe for disposition.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings once the pleadings are closed.  See Fed. R. Civ. P. 12(c).  A Rule 12(c) motion is "designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings."  See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2020).  When assessing such a motion, "the court must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party,' and may not grant the motion 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"  See Wolfington v. Reconstructive Orthopaedic Associates II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quoting In re Asbestos Prods. Liab. Litig. (No. VI), 822 F. 3d 125, 133 n.6 (3d Cir. 2016)).  When deciding a motion for judgment on the pleadings, "a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'"  See id. (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

4

## III. DISCUSSION

Defendant's motion for judgment on the pleadings is based on its argument that the September 3, 2020 release agreement releases all of Plaintiffs' claims against Defendant. (Doc. No. 23 at 4.) Accordingly, Defendant maintains that Plaintiffs' breach of contract and insurance bad faith claims fail as a matter of law. (Id. at 13.)

### A.   Applicable Law

As a general rule, federal courts apply state contract law to decide diversity cases involving the interpretation of a contract. See Collins v. Mary Kay, Inc., 874 F.3d 176, 182 (3d Cir. 2017). Under Pennsylvania law, "[t]he intention of the parties is paramount and in construing [] a contract, the court will adopt the interpretation, which under all of the circumstances of the case, ascribes the most reasonable, probable and natural conduct of the parties." See Unit Vending Corp. v. Lacas, 190 A.2d 298, 300 (Pa. 1963); see also Sparler v. Fireman's Ins. Co. of Newark, N.J., 521 A.2d 433, 435 (Pa. Super. Ct. 1987) (applying the Pennsylvania Supreme Court's contractual interpretation doctrine to release agreements). The document itself is "the primary source of the court's understanding of the parties' intent." See Brown v. Cooke, 707 A.2d 231, 233 (Pa. Super. Ct. 1998) (quoting Flatley ex rel. Flatley v. Penman, 632 A.2d 1342, 1343–43 (Pa. Super. Ct. 1993)).

"The effect of a release is to be determined by the ordinary meaning of its language." See Republic Ins. Co. v. Paul Davis Sys. of Pittsburgh S., Inc., 670 A.2d 614, 615 (Pa. 1995); accord Taylor v. Solberg, 778 A.2d 664, 667 (Pa. 2001). A release agreement is binding "absent fraud, accident or mutual mistake." See Republic Ins. Co., 670 A.2d at 615 (quoting Buttermore v. Aliquippa Hospital, 561 A.2d 733, 735 (Pa. 1989)). It has long been held that a release agreement between parties "not to sue each other or anyone else for a given event" can release

5

others "who have not contributed consideration for the release." See id. (citing Buttermore, 561 A.2d at 735–36).  This rule applies even if "the language of the release is general, releasing for example 'any and all other persons,' rather than specifically naming the persons released." See id. (citing Buttermore, 561 A.2d at 735).

### B. Arguments of the Parties

Defendant argues that the September 3, 2020 release precludes Plaintiffs from asserting claims against it relating to UIM coverage, and therefore this case should be dismissed with prejudice.  Defendant maintains that the law in Pennsylvania favors their position because "[t]he Pennsylvania Supreme Court has repeatedly held that a general release operates to discharge even those who have paid no consideration for the release and who are not specifically named in the release, if the terms of the release clearly extend to them."  (Doc. No. 23 at 6 (citations omitted).)  Defendant asserts that the September 3, 2020 release applies to it because: (1) "this litigation is a claim and cause of action against [it]"; (2) "the cause of action arises from an act or occurrence, i.e., the underlying accident, [the tortfeasor's] liability for it, and [the tortfeasor] having been allegedly underinsured at the time;" (3) "this matter seeks recovery or loss/damages sustained in consequence of the motor vehicle accident;" (4) "[Defendant] is a firm or corporation;" and (5) Plaintiffs were advised by counsel before signing the September 3, 2020 release.  (Id. at 12, 13.)  Defendant lastly asserts that, because M. Essis's breach of contract and insurance bad faith claims are released under the release agreement, R. Essis's loss of consortium claim must also be dismissed as derivative of the other claims.  (Id. at 13, 14.)

In opposition to Defendant's motion, Plaintiffs argue that their claims should not be dismissed because the September 3, 2020 release "manifests a clear intent to preserve UIM claims generally."  (Doc. No. 26 at 11.)  Plaintiffs maintain that Defendant is "unambiguously

excluded from the class of persons discharged of liability under the [September 3, 2020 release]." (Id.)  Plaintiffs further argue that, even if Defendant prevails on its general release argument, their loss of consortium claim would not be barred as derivative of the breach of contract and insurance bad faith claims.  (Id. at 12, 13.)  Citing Buttermore and Valentino v. Philadelphia Triathlon, LLC, 209 A.3d 941 (Pa. 2019), Plaintiffs assert that a loss of consortium claim is an independent cause of action from the breach of contract and insurance bad faith claims.  (Doc. No. 26 at 13, 14.)  Therefore, Plaintiffs maintain that their loss of consortium claim "remains viable regardless of their derivative nature." (Id. at 14.)

      **C.**    **Whether the September 3, 2020 Release Precludes Plaintiffs' Claims against Defendant for Breach of Contract and Insurance Bad Faith**

Upon careful consideration of Defendant's motion, the associated briefing, the pleadings, and the exhibits to the pleadings, the Court concludes that the ordinary meaning of the release language does not support Defendant's position.  A close reading of the September 3, 2020 release reveals that it applies to "any other person, firm or corporation charged or chargeable with responsibility of liability [. . .] in consequence of an [automobile] accident that occurred [. . .] at or near SR 30 [Lincoln Way East, Fayetteville, Pa]." (Doc. No. 17-2 at 2, 4.)  The operative modifier to the "person, firm, or corporation" is "charged or chargeable with responsibility of liability" for the automobile accident that injured M. Essis.  Although Defendant argues that it is being sued because of the automobile accident that injured Plaintiffs, Defendant's liability does not stem from the liability of the tortfeasor of that accident.  Instead, according to the pleadings, Defendant's liability stems from its insurance contract with Plaintiffs.  Accordingly, it is not a firm or corporation "charged or chargeable with responsibility of liability" as envisioned by the September 3, 2020 release.

This case is similar to Bonk v. American States Insurance Co., 420 F. Supp. 3d 280 (M.D.

7

Pa. 2019).  In <u>Bonk</u>, the plaintiff sought UIM coverage from the defendant American States Insurance Company ("American States") after suffering injuries from an automobile accident.  <u>See</u> <u>Bonk</u>, 420 F. Supp. 3d at 282.  At the summary judgment stage, the defendant asserted that it was entitled to summary judgment because the plaintiff signed a general release that applied to it.  <u>See</u> <u>id.</u> at 283.  The release agreement in <u>Bonk</u> provided, in relevant part:

> This Indenture [sic] Witnesseth [sic] that we in consideration of the sum of Twenty Five Thousand and 00/00 dollars ($25,000), receipt whereof is hereby acknowledged, do hereby for our heirs, personal representatives and assign [sic], release and forever discharge Yasmin Pascual and any other person, firm or corporation charged or chargeable with responsibility of liability, their heirs, representative or assigns, form [sic] any and all claims, demands, damages, costs, expenses, loss of service, action and causes of action arising from any act or occurrence up to the present time, and particularly on account of all personal injury, disability, property damage, loss or damage of any kind sustained or that we may hereafter sustain in consequence of an accident that occurred on or about the 15th day of December, 2014, at or near East Main Street, Plymouth Boro, PA.

<u>See</u> <u>id.</u> at 282.  This Court denied the defendant's motion for summary judgment, reasoning that the language of the release agreement was not inclusive of the defendant because "[the defendant] d[id] not explain how it is (or was) [a firm or corporation] 'charged or chargeable with responsibility of liability[]'", and "American States was not Pascual's insurer at the time of the accident."  <u>See</u> <u>id.</u> at 284–85.  "Thus, the pertinent Release [sic] language . . . cannot be interpreted to include American States, an insurer that had no relationship with Pascual."  <u>Id.</u> at 285.

Here, the same contractual language is at play.  The September 3, 2020 release states "[t]his Indenture Witnesseth that we [. . .] do hereby [. . .] release and forever discharge ROGER HINTON, JADA LOREMAN, Allstate [] and <u>any other person, firm or corporation charged or chargeable with responsibility of liability</u>, [. . .] , form [sic] any and all claims".  (Doc. No. 71-2 at 2 (emphasis added).)  That is almost exactly the same language contained in the contract in

8

Bonk.  In fact, both documents are so identical that they make the same typographical error, writing "form" instead of "from."  See (id.); Bonk, 420 F. Supp. 3d at 282.  As the Court notes above, and according to the allegations of the pleadings, Defendant in this case was not the tortfeasor's insurer at the time of the automobile accident, just as American States was not in Bonk.  As such, Defendant lacks the relationship necessary to be deemed "charged or chargeable with responsibility of liability" in the same way as the defendant in Bonk.  Accordingly, the Court will deny Defendant's motion for judgment on the pleadings.[2]

## IV.   CONCLUSION

For all of the foregoing reasons, the Court will deny Defendant's motion for judgment on the pleadings.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[2]  Because Plaintiffs' breach of contract and insurance bad faith claims survive, the Court need not address whether Plaintiffs' loss of consortium claim survives without the breach of contract and insurance bad faith claims.