**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL S. ESSIS and REBECCA A. ESSIS,** | : | **No. 1:24-cv-01383** |
| **Plaintiffs** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **UNITED SERVICES AUTOMOBILE ASSOCIATION,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Before the Court is Defendant United Services Automobile Association ("USAA" or "Defendant")'s motion to dismiss (Doc. No. 33) Plaintiffs Michael Essis and Rebecca Essis (respectively, "M. Essis" and "R. Essis" and collectively, "Plaintiffs")' complaint (Doc. No. 1) for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3), and its motion for leave to file an affidavit in support of its motion to dismiss ("motion for leave") (Doc. No. 40). For the following reasons, the Court will grant the motions.

## I. BACKGROUND

### A. Factual Background[1]

M. Essis was the passenger in an automobile owned by his employer, Essis & Sons Carpet One Floor & Home, that was involved in an automobile accident on June 21, 2018, at Lincoln Way in Franklin County, Pennsylvania. (Doc. No. 1 ¶¶ 7, 19.) As a result of the automobile accident, M. Essis sustained various personal injuries. (Id. ¶ 11.) The tortfeasor, Jada Loreman, maintained automobile insurance with Allstate Fire and Casualty Insurance

[1] The factual background is drawn from the complaint. (Doc. No. 1.)

Company ("Allstate") for "bodily injury protection" with a limit in the amount of fifty thousand dollars ($50,000) per person. (Id. ¶ 14.) Allstate tendered the fifty thousand dollars to M. Essis pursuant to its policy with Ms. Loreman. (Id. ¶ 16.) As the sum provided by Allstate was insufficient to compensate Plaintiffs for the damages they suffered as a result of the accident, Plaintiffs then turned to Liberty Mutual Insurance ("Liberty Mutual"), which provided M. Essis's employer with underinsured motorist ("UIM") protection. (Id. ¶ 19.) After submitting a UIM claim with Liberty Mutual, M. Essis received the three-hundred-and-fifty-thousand-dollar limit of his employer's policy with Liberty Mutual. (Id. ¶¶ 20, 21.) However, because the four hundred thousand dollars ($400,000) collected from Allstate and Liberty Mutual was still insufficient to compensate Plaintiffs for their damages, they then turned to Defendant USAA, who contracted with Plaintiffs to provide secondary UIM coverage. (Id. ¶¶ 17, 22, 23, 28.)

Defendant USAA initially denied Plaintiffs' request for coverage on July 27, 2023, approximately seven months after Plaintiffs submitted their written demand for Defendant to tender an offer of UIM coverage. (Id. ¶¶ 30, 32.) That same day, Plaintiffs, through counsel, requested that Defendant "re-review" their December 21, 2022 demand package and the supplemental documentation they provided on July 11, 2023. (Id. ¶ 36.) On September 19, 2023, Defendant informed Plaintiffs that it was re-opening its investigation and would require additional time to evaluate their UIM claim. (Id. ¶ 37.) On May 6, 2024, approximately a year and a half after the submission of Plaintiffs' written demand, Defendant informed Plaintiffs that it was still evaluating their claim. (Id. ¶ 38.)

**B. Procedural History**

On August 16, 2024, Plaintiffs initiated the instant action by filing a complaint in this Court, alleging that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a) because the

amount in controversy exceeds $75,000 and "there is complete diversity of citizenship between the litigants."[2] (Id. ¶¶ 1–4.) In their complaint, Plaintiffs assert claims against Defendant for breach of contract (Count I) and insurance bad faith (Count II). (Id. ¶¶ 40–55.) Appended to the complaint and labeled "Exhibit A" is a copy of an automobile policy Plaintiffs maintained with Defendant. (Doc. No. 1-1.)

On September 4, 2024, Defendant filed a motion to dismiss Plaintiffs' insurance bad faith claim (Count II), pursuant to Federal Rule of Civil Procedure 12(b)(6), along with a brief in support of the motion. (Doc. Nos. 8, 9.) On the same day, Defendant also filed a corporate disclosure statement pursuant Federal Rule of Civil Procedure 7.1, which states as follows:

> USAA is a Texas corporation. It is not publicly held. USAA is a reciprocal interinsurance exchange domiciled in Texas that is an unincorporated association. USAA has no parent corporation and is not a publicly traded company

(Doc. No. 10 at 1.) On September 16, 2024, Plaintiffs filed both a brief in opposition (Doc. No. 11) and a reply (Doc. No. 12) to Defendant's motion to dismiss Count II of the complaint, and on September 20, 2024, Defendant filed its reply brief (Doc. No. 13). The Court subsequently issued a Memorandum and Order denying Defendant's motion to dismiss the insurance bad faith claim (Count II) on December 16, 2024. (Doc. Nos. 15, 16.) Thereafter, on January 6, 2025, Defendant filed an answer to the complaint and a counterclaim for declaratory judgment. (Doc. No. 17.) Notably, paragraph three of Defendant's answer and paragraph 1 of its counterclaim state that "USAA is a corporation, authorized to transact business in the Commonwealth of Pennsylvania, with its principal place of business at 9800 Fredericksburg Road, San Antonio TX 78288." (Id. at 1 ¶ 3, 13 ¶ 1.) On January 24, 2025, Plaintiffs filed an answer to Defendant's

---

[2] With respect to diversity of citizenship, the complaint specifically states that Plaintiffs are "citizen[s] of Pennsylvania", whereas Defendant "is a Texas insurance company with a principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288 . . . . [and thus] a corporate citizen of Texas or state other than Pennsylvania." (Doc. No. 1 ¶¶ 1–3.)

counterclaim (Doc. No. 19), and on January 31, 2025, Defendant filed a motion for judgment on the pleadings as to its counterclaim (Doc. No. 22). Defendant subsequently filed a brief in support of its motion for a judgment on the pleadings (Doc. No. 23) on February 3, 2025, and on February 19, 2025, after seeking an extension of time, Plaintiffs filed their brief in opposition (Doc. No. 26). On July 21, 2025, the Court issued a Memorandum and Order denying Defendant's motion for judgment on the pleadings. (Doc. Nos. 29, 30.)

On October 6, 2025, Defendant filed the instant motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(h)(3), arguing, for the first time, that the Court lacks subject matter jurisdiction because "[t]he parties do not and have never had diversity of citizenship." (Doc. No. 33 at 1, 5.) On the same day, Defendant filed an amended corporate disclosure statement, stating as follows:

> USAA is a reciprocal interinsurance exchange organized under Texas law that is an unincorporated association. USAA has no parent corporation and is not a publicly traded company.

(Doc. No. 34.) On October 17, 2025, Plaintiffs filed a reply to Defendant's motion to dismiss (Doc. No. 36), and on October 20, 2025, Defendant filed a brief in support of its motion (Doc. No. 37). Thereafter, on November 3, 2025, Plaintiffs filed their brief in opposition to Defendant's motion (Doc. No. 38), which was followed by Defendant's filing of a reply brief (Doc. No. 39) on November 17, 2025.

On November 20, 2025, Defendant filed a motion for leave to file an affidavit in further support of its motion to dismiss for lack of subject matter jurisdiction (Doc. No. 40), to which Plaintiffs filed a reply (Doc. No. 41) on December 2, 2025. Defendant filed a brief in support of its motion for leave (Doc. No. 42) on December 4, 2025. Thereafter, on December 18, 2025, Plaintiffs filed their brief in opposition to Defendant's motion for leave (Doc. No. 43), and on

January 2, 2026, Defendant filed its reply brief (Doc. No. 44). Having been fully briefed, both of Defendant's motions (Doc. Nos. 33, 40) are ripe for disposition.[3]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." See Fed. R. Civ. P. 12(h)(3). Rule 12(h)(3) motions "are analytically identical" to Rule 12(b)(1) motions, as the only distinction between the two is "that the former may be asserted at any time and need not be responsive to any pleading of the other party." See Berkshire Fashions, Inc. v. M.V. Hakusan II,

---

[3] The Court notes that on June 10, 2026, Defendant filed a suggestion of death (Doc. No. 45) of M. Essis pursuant to Federal Rule of Civil Procedure 25(a)(1). Federal Rule of Civil Procedure 25(a) provides as follows regarding the procedure required for substitution after the death of a party:

> (1) ***Substitution if the Claim Is Not Extinguished.*** If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.
>
> (2) ***Continuation Among the Remaining Parties.*** After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties. The death should be noted on the record.
>
> (3) ***Service.*** A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

See Fed. R. Civ. P. 25(a). Defendant states that M. Essis passed away on March 20, 2026, and that on June 10, 2026, it served the suggestion of death on R. Essis in a manner that "satisfies the requirements of Fed. R. Civ. P. 25(a)." (Doc. No. 45 at 1, 3.) As explained below, the Court finds that it lacks subject matter jurisdiction over this action and, pursuant to that finding, it will grant Defendant's Rule 12(h)(3) motion to dismiss. The Court will therefore not address whether a dismissal of M. Essis's claims is appropriate under Rule 25.

954 F.2d 874, 879 n.3 (3d Cir. 1992). As such, a challenge to subject matter jurisdiction under Rule 12(h)(3), like a challenge under Rule 12(b)(1), "may be either a facial attack or a factual attack." See Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). Distinguishing between the type of attack is "significant because, among other things, it determines whether [the Court] accept[s] as true the non-moving party's facts as alleged in its pleadings." See In re Horizon Healthcare Servs. Data Breach Litig., 846 F.3d 625, 632 (3d Cir. 2017). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court 'to consider the allegations of the complaint as true.'" See Davis, 824 F.3d at 346 (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction" and permits "'a court [to] weigh and consider evidence outside the pleadings.'" See id. (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)). "The defendant has the initial burden of production to raise a factual challenge." See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC, 888 F.3d 29, 35 (3d Cir. 2018); see also Washington v. Hovensa LLC, 652 F.3d 340, 345 & n.2 (3d Cir. 2011) (distinguishing between burden of proof and burden of production and stating that the latter "determines which party must first present evidence sufficient to raise a given issue as pertinent"). "Once a factual challenge has been raised, the plaintiff then has the burden of proof to establish diversity jurisdiction by a preponderance of the evidence." GBForefront, L.P., 888 F.3d at 35.

## III. DISCUSSION

Defendant USAA asserts that, as a reciprocal interinsurance exchange, it shares the same citizenship or domicile as Plaintiff R. Essis, its policyholder. (Doc. No. 37 at 5.) Because subject matter jurisdiction in the instant action is premised on 28 U.S.C. § 1332(a) (Doc. No. 1 ¶

4), which requires diversity of citizenship between opposing litigants, see Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 346 (3d Cir. 2013) (stating that "[j]urisdiction under § 1332(a) requires 'complete diversity,' meaning that no plaintiff can be a citizen of the same state as any of the defendants") (quotation marks and citation omitted), Defendant accordingly argues that "this Court lacks jurisdiction to hear this case" and "must grant [its] [m]otion to [d]ismiss pursuant to Fed. R. Civ. P. 12(h)(3) and dismiss this action in its entirety" (Doc. No. 37 at 9–10).

For purposes of diversity jurisdiction, a corporation is treated as both a citizen of the state in which it is incorporated and the state where it has its principal place of business. See 28 U.S.C. § 1332(c). An unincorporated association, by contrast, is treated "as a citizen of each state in which it has a member." See Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n, 554 F.2d 1254, 1258 (3d Cir. 1977). "A reciprocal interinsurance exchange consists of a group of people, called subscribers or members, who cooperate to insure each other against designated risks." Chubb Custom Ins. Co. v. United Servs. Auto. Ass'n, No. 05-cv-03044, 2005 WL 2475314, at *1 (D.N.J. Oct. 5, 2005). It is "something more than a partnership and something less than an insurance corporation." See Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP, 49 F.4th 866, 871 (3d Cir. 2022) (quoting 3 Couch on Ins. § 39:48 (3d ed.)). "Because a reciprocal interinsurance exchange has no legal existence separate from its subscribers, [it] is therefore considered an unincorporated association." Chubb Custom Ins. Co., 2005 WL 2475314, at *1 (internal quotation marks and citation omitted). Thus, "we look to the citizenships of those subscribers to determine the citizenship of the exchange itself." See Peace Church Risk Retention Grp., 49 F.4th at 872. "In this Circuit, '[t]here is no dispute among the courts . . . that policyholders in a reciprocal insurance exchange are its members.'" See Amato v.

AAA Interinsurance Exch. of the Auto. Club, No. 20-cv-00684, 2020 WL 7222769, at *4 (W.D. Pa. Dec. 8, 2020) (quoting Erie Ins. Exch. v. Midea America Corp., No. 16-cv-01037, 2016 WL 6948288, at *2 (M.D. Pa. Nov. 28, 2016) (collecting cases)).

Defendant argues that Plaintiffs had notice of its status as a reciprocal interinsurance exchange prior to the filing of their complaint because the declarations page of the USAA Policy issued to R. Essis and appended to the complaint "clearly and unequivocally identifies" it as such. (Doc. No. 37 at 2–4.) Defendant additionally argues that its publicly available bylaws—a copy of which is attached to the brief in support of its motion to dismiss—"further confirm[s] that it operates as a reciprocal interinsurance exchange," and that, "consistent with the findings of other federal courts . . . [it has] members in all fifty states," thereby destroying diversity of citizenship between the parties to this action. (Doc. Nos. 37 at 9; 37-2.)

Plaintiffs, in response, "do not dispute that, as a general matter, reciprocal exchanges have been treated as unincorporated associations for purposes of diversity jurisdiction." (Doc. No. 38 at 6.) Nor do they contest that complete diversity would be lacking and a dismissal under Rule 12(h)(3) would be appropriate "[i]f Defendant USAA's present representation [regarding its corporate structure] is accurate." (Id.) Rather, finding Defendant USAA's amended corporate disclosure statement and current representations mutually exclusive with its prior affirmative representations that it is a corporation, and noting that Defendant has only provided its "purported [b]ylaws, with no affidavit or other testimonial evidence that would establish that these are, in fact, [its] correct bylaws," Plaintiffs intimate that Defendants have not provided adequate evidence to dispel the confusion and uncertainty surrounding its citizenship and organizational form. (Id. at 6–7); see also (Doc. No. 36 at 2–3 ¶ 4.)

To "allay [Plaintiffs'] apparent skepticism," Defendant USAA subsequently secured and currently seeks leave to file an affidavit from Hope Correll, Director of Executive Operation Planning of USAA, which it claims "confirm[s] that USAA is a reciprocal interinsurance exchange" and "a citizen of every state in which it has policyholders, including Pennsylvania."[4] (Doc. No. 42 at 2.) In response to Defendant's motion for leave to file Hope Correll's affidavit, Plaintiffs argue that the Federal Rules of Civil Procedure "do not permit a party to rely on a late-filed affidavit to deal with inconsistent jurisdictional representations after briefing has closed." (Doc. No. 43 at 1.) Plaintiffs further assert that "although subject matter jurisdiction may be raised at any time under Federal Rule of Civil Procedure 12(h)(3), dismissal is improper where jurisdictional facts are genuinely disputed" and "USAA's contradictory pleadings and disclosures create such a dispute." (Id.) Plaintiffs accordingly request that the Court deny Defendant's motion for leave to file an affidavit, or, in the alternative, allow discovery to proceed in this Court before any dismissal under Rule 12(h)(3), "so that the jurisdictional facts placed in dispute by USAA's own filings may be developed on a full record." (Id. at 4–5.)

Upon careful consideration of Defendant's motions, the arguments of the parties, the record in this case and relevant authority, the Court will grant Defendant's motion for leave and its motion to dismiss. First and foremost, because Defendant "attacks the factual allegations

---

[4] The affidavit states, in relevant part, as follows:

> USAA is a reciprocal interinsurance exchange organized under Texas law. It is an unincorporated association of subscribing members. It is not a corporation. It has no parent corporation and is not a publicly traded corporation. As a reciprocal interinsurance exchange, USAA is a citizen of every state in which it has policyholders. USAA has policyholders who are citizens of the Commonwealth of Pennsylvania.

(Doc. No. 42-1.)

underlying the complaint's assertion of jurisdiction," see Davis, 824 F.3d at 346, specifically, the allegations contained in paragraphs two, three, and four of the complaint which assert that complete diversity of citizenship exists because Defendant "is a corporate citizen of Texas or state other than [Plaintiffs' domiciliary of] Pennsylvania" (Doc. No. 1 ¶¶ 2–4), by arguing that, contrary to these allegations, it is in fact a corporate citizen of Pennsylvania and therefore not diverse from Plaintiffs, the Court construes Defendant's motion to dismiss for lack of subject matter jurisdiction as mounting a factual attack.[5] Accordingly, the Court is permitted to "consider evidence outside the pleadings" in determining its jurisdiction over this case—including the aforementioned bylaws and affidavit submitted by Defendant. See Davis, 824 F.3d at 346 (internal quotation marks and citation omitted).

Where a defendant factually contests a plaintiff's jurisdictional allegations, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction," and "then decide[] the jurisdictional issue by weighing the evidence." See McCann v. Newman Irrevocable Tr., 458 F.3d 281, 290 (3d Cir. 2006). "'[I]t is incumbent upon the plaintiff to respond to the defendant's sworn factual assertions' with something more than conclusory responses." Cunningham v. Lenape Regional High Dist. Bd. Of Educ., 492 F. Supp. 2d 439, 447 (D.N.J. 2007) (quoting International Ass'n of Machinists & Aerospace Workers v. Northwest

[5] The Court notes that it is unclear whether Defendant intended to assert a facial or factual attack on the Court's jurisdiction, as its motion to dismiss states that "this matter involves a 'facial' challenge to subject-matter jurisdiction" (Doc. No. 33 at 6 n.1), whereas its subsequent briefs assert that Plaintiffs bear a jurisdictional burden that is specific to factual attacks (Doc. Nos. 37 at 9; 39 at 4). Nevertheless, the ambiguity of Defendant's intention does not affect the Court's conclusion—based on the arguments asserted and the procedural posture of this case—that Defendant in effect asserts a factual attack. See Agency Ins. Co. of Maryland v. Dobson, No. 20-cv-06514, 2022 WL 22893878, at *1 n.1 (E.D. Pa. Feb. 7, 2022) (finding that although the defendant's motion fails to "specify whether his intention was to lodge a facial or factual jurisdictional challenge . . . given the context and procedural posture of [the] case, it must be construed as a facial challenge").

Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982)). "If the plaintiff does not meet and controvert the defendant's factual assertions by affidavit or other sworn proofs, then the district court must determine whether it has subject matter jurisdiction based upon the factual context presented by the defendant." International Ass'n of Machinists & Aerospace Workers, 673 F.2d at 711–12. However, if "the plaintiff's and defendant's affidavits present a disputed issue of material fact, the district court must permit the case to proceed to a plenary trial on the contested issues" before determining jurisdiction. See id.

Here, Plaintiffs have not provided evidence in support of this Court's jurisdiction, despite having had the opportunity to do so in connection with their briefs opposing Defendant's motion to dismiss for lack subject matter jurisdiction and motion for leave to file an affidavit in support of that motion. Rather than disputing Defendant's jurisdictional assertions with their own affidavits or other sworn proof, Plaintiffs rely on the inconsistency between Defendant's prior and current jurisdictional representations as sufficient to create a dispute of material fact that warrants jurisdictional discovery. However, in the absence of rebuttal evidence in support of this Court's jurisdiction, e.g., an affidavit or other sworn proof stating that Defendant is not a reciprocal interinsurance exchange and/or is a corporation domiciled in a state other than Plaintiffs' state of citizenship, the Court cannot conclude, based on the Defendant's prior representations alone, that a dispute of material jurisdictional fact exists regarding Defendant's citizenship or organizational structure. Further, it is unlikely that discovery will uncover facts supporting this Court's jurisdiction given that Plaintiff's self-produced insurance policy with Defendant notes Defendant's status as a reciprocal interinsurance exchange. See Wright v. New Jersey/Dep't of Educ., 115 F. Supp. 3d 490, 497 (D.N.J. 2015) (stating that "[a] party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely

to produce the facts needed to withstand a Rule 12(b)(1) motion"). Accordingly, the Court "must determine whether it has subject matter jurisdiction based upon the factual context presented by [] [D]efendant [USAA]." See International Ass'n of Machinists & Aerospace Workers, 673 F.2d at 711–12. Because a reciprocal interinsurance exchange shares the citizenship of its policyholders, see Peace Church Risk Retention Grp., 49 F.4th at 872; Amato, 2020 WL 7222769, at *4, and because the evidence submitted by Defendant supports its factual assertion that it is a reciprocal interinsurance exchange, the Court concludes that diversity of citizenship does not exist between Defendant and Plaintiffs, its policyholders, and will accordingly grant Defendant's motion to dismiss for lack of subject matter jurisdiction.[6]

---

[6] The Court notes that Plaintiffs requested, in their brief opposing Defendant's motion to dismiss, that the Court: dismiss this action without prejudice; transfer it to the appropriate Pennsylvania Court of Common Pleas pursuant to 42 Pa. C.S. § 5103; assess the costs of transfer against Defendant; and direct that Defendant may not relitigate in state court issues already decided by the Court. (Doc. No. 38 at 9.) The Court notes that "[although] 42 Pa. C.S. § 5103 allows for transfer of a case from federal to state court where federal jurisdiction is found to be lacking, such power lies with the parties themselves, not with the district court." See Majek Fire Prot., Inc. v. Carusone Constr., Inc., No. 03-cv-03692, 2006 WL 1704562, at *1 (E.D. Pa. June 13, 2006); Williams v. F.L. Smithe Mach. Co., 577 A.2d. 907, 909 (Pa. Super. Ct. 1990) (stating that "in order for the [42 Pa. C.S. § 5103] to apply to prevent a litigant from losing the opportunity to litigate his case on the merits simply because he is in error regarding federal jurisdiction, it is not necessary that the federal court transfer the case or take other action following the determination that federal jurisdiction is absent. All that is required is an order entered by the federal court dismissing the matter for lack of jurisdiction"). Further, Plaintiffs do not cite to any legal authority supporting their proposition that the text of 42 Pa. C.S. § 5103 implicitly provides the Court with the authority to assess transfer costs against the Defendant. (Doc. No. 38 at 8.) Lastly, Defendant cannot be prevented from relitigating issues previously adjudicated by the Court (i.e. issue preclusion), because the Court's orders denying Defendant's motion to dismiss Count II of the complaint (Doc. No. 16) and motion for judgment on the pleadings (Doc. No. 30) were interlocutory orders, not final judgments adjudicating relevant issues in a manner that satisfies the requirements of issue preclusion. See Burlington N. R. Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231–32 (3d Cir. 1995) (noting that "[t]he prerequisites for the application of issue preclusion are satisfied when: (1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment) (emphasis added) (internal quotation marks and citation omitted).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for leave and motion to dismiss for lack of subject matter jurisdiction. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania